COMMERCIAL BANK OF DAWSON v. DANIEL MAGUIRE.[1]

May 29, 1903.

Nos. 13,475—(126).

Alteration in Note.

Changes in a negotiable promissory note, after delivery, as to the rate of interest and date when it is due, are material alterations, and, though apparently of benefit to the maker, subject the instrument in the hands of a purchaser before maturity to all defenses between him and the payee.

Evidence.

Evidence considered, and *held* to reasonably support the finding of the jury that the holder of a note was not a bona fide purchaser thereof.

[1] Reported in 95 N. W. 212.

Appeal by plaintiff from an order of the district court for Lac qui Parle county, Powers, J., denying a motion for judgment not-withstanding the verdict or for a new trial. Affirmed.

*A. W. Ewing*, for appellant.

*Wellington Brown*, for respondent.

LOVELY, J.

Plaintiff seeks to recover upon a negotiable promissory note for $100, which it claims to have purchased before maturity, in the usual course of business. The defenses were: First, no considera-tion, with knowledge of its worthlessness; second, that there had been material alterations of the instrument before the transfer. The cause was tried to a jury, with verdict for defendant. This appeal is from an order denying a new trial.

The evidence is clear and ample that there was no consideration for the note, but it is claimed that there was a failure to show that plaintiff was not a bona fide holder. Briefly stated, the testi-mony upon this issue tends to prove that a person pretending to be a doctor called on defendant, and proposed to treat him for an ailment until he was cured, when he was to receive $100. He gave defendant his name, and received the note for treatment and medicines. The note was of the usual form, having a blank space for the insertion of interest. It was understood by the parties that the note was only to be evidence of the promise to pay when defendant was cured. The person receiving the note took it to plaintiff's cashier the next day, and offered it for sale, giving a different name than that assumed when he dealt with the defend-ant. When the note was sold to the bank, the figure "7" had been written in the blank space for interest, and the words "after due" written over the "7." The cashier purchased the note for the bank, kept it until some time after due without saying anything to the payee about the purchase, but made admissions to another that the bank did not deal in that kind of paper, and that the note had a "fakey appearance." Defendant did not pay it, and it was placed in the hands of an attorney of the bank for collection, who stated to defendant that he had received it from Chicago.

Taking all these circumstances together, we are of the opinion

that there was some evidence tending to show that the purchaser did not exercise ordinary prudence in respect to the knowledge derived by him from the inspection of the paper, which view is strengthened by the admissions of the cashier. Hall v. Hale, 8 Conn. 336; First Nat. Bank v. County Commrs. Scott Co., 14 Minn. 59 (77); Stein v. Rheinstrom, 47 Minn. 476, 50 N. W. 827. The testimony is much stronger to show that the alterations referred to were made after delivery, and, although such changes might not have actually prejudiced the maker, yet they affected his liability; it was not his note; and it is no answer to the claim that there were material alterations that their effect was favorable to the defendant by lessening the amount of interest to be paid, for no one has a right to vary another's obligations at his discretion, whether for his good or ill. 2 Daniel, Neg. Inst. (5th Ed.) § 1375; Board Co. Commrs. of Fillmore Co. v. Greenleaf, 80 Minn. 242, 83 N. W. 157.

At the close of the evidence the court submitted the following questions to the jury:

"First. Did the plaintiff bank purchase the note in question in good faith?" to which the jury answered "No." "Second. Was the note in question altered after it was delivered, without the consent of the maker, by inserting in the printed interest clause the figure 7, and interlining the words 'after due'?" which the jury answered "Yes."

Either of these answers would support the verdict, and, the court having reviewed the testimony, and refused a new trial, we must hold that the order appealed from should be affirmed.

Order affirmed.